UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILLIAM B. CROCKETT III, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Cause No. 3:15-cv-384-RLM |
| ) | |
| SUPERINTENDENT, ) | |
| ) | |
| Respondent. ) | |

OPINION AND ORDER

William B. Crockett, III, filed a habeas corpus petition challenging his murder conviction and 65 year sentence in the St. Joseph Superior Court on January 25, 2005, under cause number 71D01-310-MR-27. ECF 2 at 1. Mr. Crockett raises one ground arguing that his direct appeal counsel "was ineffective in that he raised ineffective assistance of trial counsel on direct appeal and thereby failed to preserve for postconviction relief ineffective assistance claims based on evidence outside of the record on appeal." To succeed on an ineffective assistance of counsel claim on post-conviction review in the state courts, Mr. Crockett had to show that counsel's performance was deficient and that the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668 (1984). This claim was adjudicated on the merits and the Indiana Court of Appeals decided that he had not met either prong of the Strickland test.

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error

correction through appeal." Woods v. Donald, 575 U.S. \_\_, \_\_; 135 S.Ct. 1372, 1376 (2015) (quotation marks and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Woods v. Donald, 575 U.S. \_\_, \_\_; 135 S.Ct. 1372, 1376 (2015) (quotation marks and citations omitted).

Mr. Crockett argues that neither the post-conviction trial court nor the Indiana Court of Appeals "officially reached the 'performance' prong [of the Strickland test], although the postconviction trial court essentially found that Petitioner's trial counsel was ineffective and the Indiana Court of Appeals essentially found that Petitioner's appellate counsel was ineffective." ECF 2-2 at 5. Mr. Crockett is incorrect. Both courts addressed the performance prong and

2

neither found that appellate counsel was deficient. In its amended findings of fact and conclusions of law, the post-conviction trial court found:

> Based on the testimony of appellate counsel, this court concludes that appellate counsel's performance was not deficient when he decided to raise a claim of ineffective assistance of trial counsel on direct appeal. Appellate counsel made a tactical decision based on his reading of the trial record and believed he had sufficient grounds on the face of that record to support the claim. The fact that the claim was not ultimately successful or that the decision to raise it in the direct appeal can be questioned did not render appellate counsel's performance deficient.

Appellant's [Post-Conviction] Appendix at 155; ECF 2-3 at 29. The Indiana Court of Appeals didn't disturb that finding when it addressed appellate counsel's performance.

> During the post-conviction hearing, Crockett's appellate counsel acknowledged that ineffective assistance of counsel claims should rarely be raised on direct appeal, but explained that he decided to present such issues on direct appeal because he "thought [they] were supported by facts that were in the record" and were "legitimate appellate issues." Transcript of Post–Conviction Hearing at 85. Crockett's appellate counsel further stated that, case law notwithstanding, in his "opinion," he did not believe that raising a claim of ineffective assistance of counsel on direct appeal would necessarily preclude the petitioner from raising the issue again on completely different grounds through a petition for postconviction relief. Id. at 87.
> Crockett's appellate counsel clearly misunderstood the state of the law insofar as it was his "opinion" that presenting claims of ineffective assistance of counsel on direct appeal would not foreclose Crockett from presenting additional claims of ineffective assistance of counsel during post-conviction proceedings. Id. Since our Supreme Court's decision in Woods v. State, [701 N.E.2d 1208 (Ind.1998)], it has been clear that such is in fact the effect of presenting a claim of ineffective assistance on direct appeal – any additional claims of ineffective assistance of counsel are foreclosed from collateral review. While appellate counsel's decision to present such issue on direct appeal was, in part, a tactical decision, it cannot be said that his misunderstanding or "opinion" of the law

3

> could serve as the basis for sound appellate strategy. That said, the post-conviction court properly concluded that Crockett's claim of ineffective assistance of appellate counsel nonetheless failed because Crockett did not establish prejudice resulting from appellate counsel's decision to raise an ineffective assistance of trial counsel claim on direct appeal.

Crockett v. State, 13 N.E.3d 556, *5 (Ind. Ct. App. 2014) (table); ECF 13-10 at 8-9. The court of appeals correctly noted that Mr. Crockett's appellate counsel understood that ineffective assistance of trial counsel claims should rarely be raised on direct appeal.[1] Though it found that appellate counsel's misunderstanding of the preclusive effect of that decision was not itself a basis for sound appellate strategy, it nevertheless found that his decision to raise an ineffective assistance of trial counsel claim on direct appeal was in part a tactical decision. The court's explanation was an implicit[2] determination that counsel's performance wasn't deficient. That determination was not unreasonable as long as counsel's reasons were not "so far off the wall that we can refuse the usual deference that we give tactical decisions by counsel, his performance will not qualify as deficient." United States v. Lathrop, 634 F.3d 931, 937 (7th Cir. 2011).

---

[1] During the post-conviction hearing, direct appeal counsel explained that "in most instances it's almost impossible to effectively raise ineffective assistance of counsel on direct appeal, because you are only dealing with the direct record, the trial record, and to demonstrate ineffective assistance of trial counsel ordinarily requires a going outside the record. Which is peculiarly within the ambit of post conviction relief rather than direct appeal"). PCR Transcript at 80-81.

[2] Mr. Crockett argues that the court of appeals didn't rule on the performance prong, but if that were true, then the post-conviction relief trial court's ruling remains undisturbed because it is "sensible to look past the silence to the decision of the next state court in the chain." Prihoda v. McCaughtry, 910 F.2d 1379, 1383 (7th Cir. 1990); cf. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

Mr. Crockett argues that:

> Appellate counsel's decision in this case to raise ineffective assistance on direct appeal fell below objective standards of reasonableness based on prevailing professional norms. At least since the Indiana Supreme Court's decision in Woods v. State, 701 N.E.2d 1208 (Ind. 1998), it has been "crystal clear" that ineffective assistance of trial counsel should not be raised on direct appeal in Indiana, since "some grounds supporting an assertion of inadequate representation will not be reasonably knowable, much less fully factually developed, until after direct appeal," and "ineffective assistance of trial counsel is not available in postconviction if the direct appeal raises any claim of deprivation of Sixth Amendment right to counsel." Id. at 1220; Timberlake v. State, 753 N.E.2d 591, 604-05 (Ind. 2001).

ECF 2-2 at 1.

Mr. Crockett has overstated the holding of Woods v. State, 701 N.E.2d 1208 (Ind. 1998). Woods didn't hold that ineffective assistance of trial counsel claims cannot – or even should not – be brought on direct appeal. Woods said that "a postconviction hearing is normally the preferred forum to adjudicate an ineffectiveness claim. We nonetheless agree that potential for administrative inconvenience does not always outweigh the costs of putting off until tomorrow what can be done today . . .." Id. at 1219. The Woods court concluded "that the most satisfactory resolution of a variety of competing considerations is that ineffective assistance may be raised on direct appeal, but if it is not, it is available in postconviction proceedings irrespective of the nature of the issues claimed to support the competence or prejudice prongs." Id. at 1216. "The defendant must decide the forum for adjudication of the issue – direct appeal or collateral review. Id. at 1220.

Woods makes clear that it is normal to wait until post-conviction to raise an ineffective assistance of trial counsel claim. That it is the best practice and should be the most common custom. In deciding whether an attorney provided deficient performance, however, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 105 (2011) (quotation marks and citation omitted). A court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised in a habeas proceeding. "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." Id. "[C]ounsel need not be perfect, indeed not even very good, to be constitutionally adequate." McAfee v. Thurmer, 589 F.3d 353, 355-56 (7th Cir. 2009) (citation omitted).

Mr. Crockett's appellate counsel mistakenly believed that an ineffective assistance of trial counsel claim could be brought both on direct appeal and again in post-conviction. Had appellate counsel acted on that belief alone, his performance would have amounted to incompetence under prevailing professional norms. But that wasn't why he raised the claim on direct appeal and it's not why the Indiana courts found that his performance wasn't deficient. He raised it as a tactical decision because he believed he had a valid claim based on the facts in the record. Though he lost on appeal, nothing in the appellate

6

opinion indicates the court believed it was a baseless issue that was improper to have raised. *See* Crockett v. State, 841 N.E.2d 669 (Table). The state courts applied a reasonable analysis that satisfies Strickland's deferential standard. Though it's possible the outcome might have differed in the state courts, it wasn't objectively unreasonable for the state courts to have found that Mr. Crockett hadn't demonstrated that his appellate counsel provided deficient performance.

Mr. Crockett also argues that "[t]he state court's finding that Crockett was not prejudiced by the deficient performances of his trial and direct appeal counsel was unreasonable." ECF 16 at 2. He argues:

> Had appellate counsel not raised ineffective assistance of trial counsel on direct appeal, it would have been available in postconviction proceedings. If ineffective assistance of trial counsel had been available in postconviction proceedings, Petitioner would have been granted postconviction relief based on ineffective assistance of trial counsel [and] should have been granted postconviction relief based on ineffective assistance of appellate counsel.

ECF 2-2 at 4.

> Evidence established on postconviction relief showed that Petitioner's trial counsel was ineffective for four reasons, aside from the reasons raised on direct appeal: first, counsel failed to object to evidence that Petitioner asked for a "deal"; second, counsel in attempting to respond to this evidence opened the door to the admission of evidence that Petitioner had been arrested for sexual offenses involving two women; third, counsel failed to elicit admissions from the State's witnesses that Petitioner had repeatedly and firmly asserted his innocence; and fourth, counsel failed to object to any and all testimony by Corbett and Kaps concerning any and all of the Petitioner's statements during their interview with him on October 23, 2003, on the grounds that they were made (a) prior to Miranda warnings being given, (b) as a result of being falsely told by Corbett and Kaps that a prosecutor was watching the interview from the next room, and/or (c) after Petitioner had invoked his right

to counsel and in response to further police-initiated custodial interrogation in violation of Miranda.

ECF 2-2 at 2.

The Indiana court of appeals found, "that Crockett failed to show prejudice from appellate counsel's decision to raise ineffective assistance of trial counsel on direct appeal. More specifically, Crockett failed to show that had his claim of ineffective assistance of trial counsel been preserved for post-conviction review, he would have been entitled to relief." Crockett v. State, 13 N.E.3d 556, *8 (Ind. Ct. App. 2014) (table).

The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). A reasonable probability is one "sufficient to undermine confidence in the outcome." Id. at 693. In assessing prejudice under Strickland "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). "On habeas review, [the] inquiry is now whether the state court unreasonably applied Strickland . . .." McNary v. Lemke, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." Id. As previously explained, appellate counsel didn't provide deficient performance. Nevertheless, here is how the court of appeals explained its decision that these four events were harmless.

> Officer Corbett's testimony during trial that Crockett requested a "deal" in exchange for information concerning Langenderfer's murder likely had minimal, if any, impact on the

8

jury's verdict. Crockett maintains that the inference to be drawn from the fact that he requested a deal was that he was in fact guilty of or somehow implicated in Langenderfer's murder. This inference, however, was dispelled by testimony that Crockett had another motive for requesting a deal. Although Crockett's trial counsel arguably opened the door to evidence that Crockett was involved in other criminal matters, the trial court closed that door when it sustained trial counsel's objection regarding the nature of the other criminal matter and instructed the jury to disregard any testimony related thereto. Further, we note that there was also testimony that Crockett only learned of Langenderfer's murder two days after it occurred and that Crockett was out of town at the time of Langenderfer's murder. Considered together, any testimonial reference to the fact that Crockett wanted to make a deal in exchange for information about Langenderfer's murder was not, as characterized by Crockett, "tantamount" to a confession. Reply Brief at 2.

With regard to his protestations of his innocence during the videotaped interview with police, as noted above, Crockett's defense was that he had an alibi at the time of the murder. Evidence was introduced that Crockett was out of town at the time of the murder and that he only learned of the murder two days after it occurred. The jury was made aware that Crockett denied any involvement in Langenderfer's murder.

Finally, Crockett claims that his videotaped statement was in violation of Miranda, made in connection with plea negotiations, and/or illegally obtained after he had invoked his right to counsel and therefore any reference thereto violated his rights. Crockett does not support any of these claims with citations to authority. In any event, as noted above, the trial testimony that referenced portions of his statement to police was not the evidence that sealed his fate. To be sure, there was evidence from eye witnesses, consistent in relevant aspects, that Crockett was the mastermind behind Langenderfer's murder. Wright's testimony revealed that Crockett had become frustrated with Langenderfer and had decided that it was time for Langenderfer "to disappear" and that he directed Antrone Crockett and Michael Wright to "take[ ] care of" Langenderfer by meeting him "out in the country." Trial Transcript at 441, 444, 446, respectively. Wright further testified that Crockett gave them instructions on where to obtain a gun in Crockett's apartment and that they were to dispose of the gun after the murder was carried out. Crockett made arrangements to be out of town when the murder was carried out. The following morning, Crockett contacted Antrone and Wright to make sure they had followed

> through with the plan. This evidence clearly implicates Crockett in Langenderfer's murder.

Crockett v. State, 13 N.E.3d at *7; ECF 13-10 at 11-13 (footnote omitted, brackets in original).

Criminal defendants are entitled to a fair trial but not a "perfect" one. Rose v. Clark, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. Wiggins v. Smith, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quotation marks omitted). Mr. Crockett hasn't met this burden.[3]

His arguments are essentially that there is a reasonable probability he would have been acquitted of murder if the jury had heard that he protested his innocence rather than asking for a deal when police interviewed him and/or the jury was unaware that he had been arrested on unrelated sexual assault

---

[3] Attached to Mr. Crockett's amended petition is an affidavit prepared by his post-conviction and habeas corpus lawyer on May 5, 2015, after the conclusion of the post-conviction proceedings and before this case was filed. This affidavit details conversations counsel had online with the post-conviction trial judge about the prejudice standard established by Strickland. Mr. Crockett wants this court to accept this as proof that the post-conviction trial judge applied the wrong standard of law. Whether the post-conviction trial judge misunderstood the Strickland prejudice standard is irrelevant because the Indiana Court of Appeals articulated and properly applied the correct legal standard. It did so *de novo* with no deference to the conclusions of law made by the post-conviction trial court. *See* Crockett v. State, 13 N.E.3d at *3; ECF 13-10 at 6. Moreover, the affidavit is not properly part of the record in this case. *See* Boyko v. Parke, 259 F.3d 781, 790 (7th Cir. 2001) ("Because § 2254(e)(2) restricts a petitioner's attempts to supplement the factual record, [the petitioner] must satisfy that provision's requirements before he may place new factual information before the federal court."). The affidavit wasn't considered as a part of the decision to deny habeas corpus relief.

charges. Alternatively, he aregues there is a reasonable probability he would have been acquitted if the jury had not heard anything about his October 23, 2003, police interview. The crux of these arguments is that the evidence against Mr. Crockett was otherwise so weak that without testimony that he wanted a deal or had been separately charged with a sexual assault, there is a reasonable probability that he would have been acquitted of murder. The state court determination that the police testimony about his interview and his unrelated sexual assault charges were harmless wasn't objectively unreasonable. The state court determination that the admission of that police testimony didn't undermine confidence in the outcome wasn't objectively unreasonable. The state court determination that there was not a reasonable probability that the result would have been different wasn't unreasonable. Reasonable jurists could disagree as to whether (or to what extent) this police testimony impacted the decision making process of the jury. But fairminded disagreement isn't a basis for habeas corpus relief; indeed, fairminded disagreement precludes habeas corpus relief. *Id.* The habeas corpus petition must be denied.

Under Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

11

encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there is no basis for encouraging Mr. Crockett to proceed further, so a certificate of appealability must be denied. For the same reasons, he cannot appeal in forma pauperis because an appeal could not be taken in good faith.

For the these reasons the court DENIES habeas corpus relief; DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; DENIES leave to appeal in forma pauperis pursuant to 28 U.S.C. § 1915(a)(3); and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED.

ENTERED: July 31, 2017.

                                            /s/ Robert L. Miller, Jr.
                                            Judge
                                            United States District Court